Stacey D. Adams, Esq. (NJ Bar #022481998)
Emily Freeman David, Esq. (NJ Bar #121862014)
**LITTLER MENDELSON**
A Professional Corporation
One Newark Center, Eighth Floor
Newark, New Jersey  07102
973.848.4700
*Attorneys for Defendant*
*Gardner P. Dunnan*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| J.S.,<br><br>    Plaintiff,<br><br>  v.<br><br>DALTON SCHOOLS, INC. and GARDNER P. DUNNAN,<br><br>    Defendants. | Civil Action No. 2:18-cv-10258 (CCC)(SCM) |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## GARDNER P. DUNNAN'S MOTION TO TRANSFER VENUE

---

*On the brief:*

    Stacey D. Adams, Esq.
    Emily Freeman David, Esq.

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ........................................................................................ 2

LEGAL ARGUMENT ............................................................................................. 3

    I.    Standard of Review ................................................................................. 3

    II.    The Instant Matter Could Have Been Brought In The Southern District of New York ............................................................................................. 4

    III.    Transfer Of This Case To The SDNY Would Be In The Interest Of Justice And For The Convenience Of The Parties And Witnesses ................................... 5

        A.    The Private Interest Of The Parties Weighs In Favor Of Transfer To The SDNY ................................................................. 6

            1.    Plaintiff's Choice Of Forum Should Not Be Afforded Any Deference .................................................... 6

            2.    Defendants' Preference Is To Litigate In New York .................................................................................. 9

            3.    The Ease Of Access To Sources Of Proof And Convenience Of Witnesses Weighs In Favor of Litigation In The SDNY ................................................... 10

            4.    The Claims Arose In New York ....................................... 10

        B.    The Public Interest Weighs In Favor Of Transfer To The SDNY ................................................................................. 11

            1.    New York Has A Strong Local Interest In Resolving This Dispute ..................................................... 12

            2.    Maintaining This Action In New Jersey May Create Duplicative Litigation In Two Separate Fora ..................................................................................... 13

            3.    The SDNY Is Most Familiar With The Governing Law ................................................................. 14

CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

PAGE

CASES

*AB Coaster Holdings, Inc. v. Icon Health & Fitness, Inc.,*
2011 WL 6887724 (D.N.J. Dec. 29, 2011) ............................................................ 12

*Am. Tel. & Tel. Co. v. MCI Commc'ns Corp.,*
736 F.Supp. 1294 (D.N.J. 1990) ...................................................................... 6, 7

*Bailey v. Dallas Cty. Sch.,*
2016 WL 3021683 (E.D. Tex. May 26, 2016) ........................................................ 13

*CIBC World Markets, Inc. v. Deutsche Bank Sec., Inc.,*
309 F. Supp. 2d 637 (D.N.J. 2004) .................................................................. 14

*Continental Grain Co. v. Barge FBL–585,*
364 U.S. 19 (1960) .................................................................................. 14

*Days Inns Worldwide, Inc. v. Ram Lodging, LLC,*
2010 WL 1540926 (D.N.J. Apr. 14, 2010) ............................................................ 10

*Doe v. Roe,*
799 N.Y.S.2d 160 (Sup. Ct. 2004) ..................................................................... 8

*Dworin v. Deutsch,*
2006 WL 3095945 (D.N.J. Oct. 30, 2006) ............................................................ 15

*Elliott v. The Marist Bros. of the Sch.,*
675 F. Supp. 2d (D. Del. 2009) ....................................................................... 15

*Fortay v. Univ. of Miami,*
1994 WL 62319 (D.N.J. Feb. 17, 1994) .......................................................... 6, 7, 14

*Franklin U.S. Rising Dividends Fund v. Am. Int'l Grp., Inc.,*
2014 WL 1555133 (D.N.J. Apr. 14, 2014)
*aff'd,* 2014 WL 3748214 (D.N.J. July 29, 2014) ..................................................... 10

*Girgis v. Hartford Life & Acc. Ins. Co.,*
2011 WL 2115814 (D.N.J. May 25, 2011) .............................................................. 8

*Hitachi Cable Am., Inc.,*
1985 WL 2135 (D.N.J. Feb. 14, 1986) ................................................................ 11

*Hoeft v. Tucson Unified Sch. Dist.,*
967 F.2d 1298 (9th Cir. 1992) ....................................................................... 13

*J.G. v. C.M.,*
2011 WL 5600040 (D.N.J. Nov. 17, 2011) ............................................................ 15

*Jacobs v. Cider Mill Farms Co.,*
1999 WL 1418878 (D.N.J. Oct. 25, 1999) ............................................................ 11

*Johnson v. Nextel Commc'ns, Inc.,*
2007 WL 2814649 (D.N.J. Sept. 21, 2007) ......................................................... 8, 12

*Jumara v. State Farm Ins. Co.,*
55 F.3d 873 (3d Cir. 1995) ........................................................................... 5

ii

# TABLE OF AUTHORITIES

PAGE

*Laureate Educ., Inc. v. Megahed,*
  2010 WL 2651895 (D. Md. July 1, 2010) .............................................................. 13

*McNulty v. J.H. Miles & Co.,*
  913 F. Supp. 112 (D.N.J. 2012) ...................................................................... 6, 10

*Mendoza v. U.S. Custom & Border Protection,*
  2007 WL 842011 (D.N.J. March 19, 2007) .......................................................... 5

*Metro. Life Ins. Co. v. Bank One, N.A.,*
  2012 WL 4464026 (D.N.J. Sept. 25, 2012) .................................................... 10, 12

*Moore v. Baker,*
  2018 WL 3421601 (M.D. Ala. June 18, 2018) .............................................. 12-13

*Nat'l Prop. Inv'rs VIII v. Shell Oil Co.,*
  917 F.Supp. 324 (D.N.J. 1995) ...................................................................... 14, 15

*O'Brien v. Pennington Sch.,*
  2008 WL 160588 (E.D. Pa. Jan. 15, 2008) ........................................................ 13

*P.V. ex rel. T.V. v. Camp Jaycee,*
  197 N.J. 132, 962 A.2d 453 (2009) .................................................................... 15

*Park Inn Int'l, L.L.C. v. Mody Enterprises, Inc.,*
  105 F. Supp. 2d 370 (D.N.J. 2000) .................................................................... 11

*Patton Boggs LLP v. Chevron Corp.,*
  2012 WL 6568461 (D.N.J. July 18, 2012)
  *report & recommendation adopted*
  2012 WL 6568526 (D.N.J. Dec. 14, 2012) ...................................................... 7, 14

*Ricoh Co., Ltd. v. Honeywell, Inc.,*
  817 F.Supp. 473 (D.N.J. 1993) ........................................................................ 6, 7

*Santi v. Nat'l Bus. Records Mgmt.,*
  722 F. Supp. 2d 602 (D.N.J. 2010) .................................................................... 4, 5

*Shubert v. Marriott Int'l, Inc.,*
  2016 WL 245252 (D.N.J. Jan. 21, 2016) ...................................................... 12, 14

*Smith v. Circle Line Sightseeing,*
  2012 WL 1495446 (D.N.J. Apr. 26, 2012) .......................................................... 11

*Thorlabs, Inc. v. Townsend Commc'ns, L.L.C.,*
  2004 WL 1630488 (D.N.J. June 30, 2004) .......................................................... 11

*Tischio v. Bontex, Inc.,*
  16 F. Supp. 2d 511 (D.N.J. 1998) .................................................................. 14, 15

*Zumpano v. Quinn,*
  12 A.D.3d 1096 (2004)
  *aff'd,* 6 N.Y.3d 666 (2006) .................................................................................. 8

# TABLE OF AUTHORITIES

PAGE

**STATE STATUTES**

New Jersey Child Sexual Abuse Act ................................................................................ 2, 9
N.J.S.A. 2A:61B-1(b) ............................................................................................................ 9

**FEDERAL STATUTES**

28 U.S.C. § 1391 .................................................................................................................. 4
28 U.S.C. § 1391(c)(2) ........................................................................................................ 4
28 U.S.C. § 1404(a) ..................................................................................... 2, 3, 4, 5, 14, 16

**STATE RULES**

NYCPLR 208 ........................................................................................................................ 8
NYCPLR 213-C .................................................................................................................... 8
NYCPLR 215 ........................................................................................................................ 8

**TREATISE**

15 Wright, Miller & Cooper § 3847 ..................................................................................... 5

## PRELIMINARY STATEMENT

Defendant Gardner P. Dunnan ("Mr. Dunnan") respectfully submits this memorandum of law in support of his Motion to Change Venue to the United States District Court for the Southern District of New York ("SDNY"). In this matter, Plaintiff J.S. ("Plaintiff") alleges that she attended Dalton School, Inc. (the "Dalton School"), a private school located in New York City, for a brief period of time over thirty years ago (from September 1986 through January 1987) and that, during that time, she was sexually abused by the Dalton School's then headmaster, Mr. Dunnan, on four separate occasions. At the outset, and although not the subject of the instant Motion, it is important to note that Mr. Dunnan adamantly denies Plaintiff's allegations and looks forward to his day in Court where he can prove his innocence of these charges. Before he can have his day in Court, however, it is critically important that this case be venued in the proper forum – the Court where the vast majority of the conduct occurred, the Court that has the most ties to the Parties, the Court that has the greatest interest in regulating its local schools and educators, and the Court most familiar with the governing laws. That Court is indisputably the SDNY.

There can be no doubt that this case belongs in New York. The Dalton School is located exclusively in New York (and has indeed filed a Motion for Dismiss for lack of personal jurisdiction due to the utter absence of contact with New Jersey). Plaintiff was a student of the Dalton School solely in New York. Plaintiff lived in New York at the time the allegations arose, and did not move to New Jersey until 2008, twenty years after the alleged incidents occurred. Mr. Dunnan was a resident of New York at the time the allegations arose and remains a New York resident to this day. Mr. Dunnan worked for the Dalton School as its headmaster entirely in New York. Plaintiff lived with the Dunnan family during the time that she was a student at

1

their apartment in New York and claims to have worked for them in New York as a "family helper." Further, three of the four acts of alleged abuse occurred in New York. Under these circumstances, there can be no question that the Courts in New York have the most compelling interest in deciding this case.

Despite this, Plaintiff has strategically filed her claims in the District of New Jersey ("DNJ"). Her sole tie to this Court is her claim that, on one single occasion, Mr. Dunnan brought her to his family's vacation home in New Jersey and allegedly fondled her breasts. *Every other allegation in the Complaint involves conduct that occurred entirely in New York.* There can be no question why Plaintiff filed this case in New Jersey despite the overwhelming connection to New York – to avail herself of the more forgiving statute of limitations under the New Jersey Child Sexual Abuse Act ("NJCSAA"). Such blatant forum shopping should not be tolerated, particularly when the facts so clearly favor transfer to another forum. Accordingly, this Court should transfer this case to the SDNY pursuant to 28 U.S.C. §1404(a).

## STATEMENT OF FACTS

This case arises from allegations of sexual misconduct by a former New York student against her New York City private school and the school's former headmaster, a New York resident, more than thirty years after the alleged misconduct occurred. *Complaint ("Compl.")* [ECF No. 1], *Passim.*

A simple reading of Plaintiff's Complaint confirms that the center of gravity of Plaintiff's claims rests in New York. Plaintiff, a New York resident at the time, allegedly met with Mr. Dunnan, another New York resident, in Putnam County, New York in 1986 to discuss her possible enrollment in the Dalton School, a prestigious private school on the Upper East Side of Manhattan. *Compl.* ¶¶ 22-23. According to the Complaint, Plaintiff was subsequently admitted

to the Dalton School and attended classes at its campus on the Upper East Side from about September 1986 until about January 1987. *Compl.*, ¶¶ 27, 32, 36, 47. While enrolled at the Dalton School, Plaintiff resided in with the Dunnan family at their home in New York City, located in close proximity to the Dalton School. *Compl.* ¶¶ 28 – 30. During that time, Plaintiff claims she worked as a "family helper" for the Dunnan family in New York. *Compl.* ¶¶ 26, 28.

Plaintiff alleges that, in the five month period that she attended the Dalton School and lived with the Dunnan family, she was subject to four incidents of sexual misconduct by Mr. Dunnan. *Compl.*, ¶ 36. By Plaintiff's own admission, only one of those alleged acts occurred in New Jersey, while Plaintiff was on a brief overnight trip in Ocean County, NJ with the Dunnan family. *Compl.*, ¶¶ 37 – 41. All of the other alleged acts of misconduct occurred in New York. *Id.* Indeed, the only contact Plaintiff had with New Jersey during this time period was her transient visits to the Dunnan family's vacation home (a home that Mr. Dunnan has not owned for more than 20 years, since 1998). [1] *Compl.*, ¶ 38. Plaintiff pleads no further contact with New Jersey until she moved to Hudson County in approximately 2008, over twenty years after the alleged incidents occurred. [ECF No. 15, ¶ 16].

## LEGAL ARGUMENT

### I.   Standard of Review

28 U.S.C. 1404 governs the transfer of a civil case from one Federal court to another. Specifically, Section 1404(a) provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought…." *Id.* Determining whether transfer is appropriate under Section 1404(a) involves a two-pronged analysis: (i) whether the Plaintiff could have originally

---

[1] The Complaint mentions three total overnight trips to New Jersey during the operative time period, but does not allege that any misconduct occurred during two of those getaways. *Compl.*, ¶¶ 38 – 41.

brought the case in the proposed forum, and (ii) whether transfer would be "in the interest of justice" and for the "convenience of parties and witnesses." *Id.*

## II.    The Instant Matter Could Have Been Brought In The Southern District of New York

The first factor the Court must analyze in determining whether to transfer venue under Section 1404(a) is whether the action could have originally been brought by the Plaintiff in the proposed forum. 28 U.S.C. 1404(a). Here, that proposed forum is the SDNY. Where, as here, subject matter jurisdiction is predicated on diversity of citizenship, a case may be brought in:

> (1) a judicial district where any defendant *resides*, if all defendants reside in the same State, (2) a judicial district in which a *substantial* part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced

*Santi v. Nat'l Bus. Records Mgmt.*, LLC, 722 F. Supp. 2d 602, 606 (D.N.J. 2010) (citing 28 U.S.C. §1391) (emphasis added). In the instant matter, both Defendants were residents of the state of New York both at the time of the alleged incidents and are still currently residents.[2] The SDNY has personal jurisdiction over both Defendants. In fact, the Dalton School has already filed a Motion to Dismiss arguing that the DNJ lacks personal jurisdiction over it. [ECF No. 12] Moreover, a substantial part of the events giving rise to Plaintiff's Complaint occurred in Manhattan. Indeed, every single one of Plaintiff's allegations – with the exception of a single touching that allegedly occurred while on a brief overnight trip to New Jersey – transpired in New York. *Compl.* ¶¶ 37-41. Plaintiff attended the Dalton School in New York. *Compl.* ¶¶ 27, 32. Mr. Dunnan performed his job as a headmaster exclusively in New York. *Compl.* ¶¶. Plaintiff resided with, and purportedly worked for, the Dunnan family in New York. *Compl.* ¶¶ 26, 28-30. Under these facts, there is no question Plaintiff could have, and should have,

---

[2] A corporation such as the Dalton School is "deemed to reside . . . in any judicial district in which [it] is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2).

originally filed this action in New York.

**III.   Transfer Of This Case To The SDNY Would Be In The Interest Of Justice And For The Convenience Of The Parties And Witnesses**

The second factor the Court must analyze in determining whether to grant a motion to change is venue is whether transfer would be in the interest of justice and for the convenience of the parties and witnesses.  28 U.S.C. § 1404(a).  With respect to this second prong, courts should "not limit[] their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice)" and should instead "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (citing 15 WRIGHT, MILLER & COOPER § 3847). Courts should balance private and public interests in determining whether transfer is appropriate. *Id.*  The private interest factors to be considered may include: "(1) the choice of forum of the plaintiff; (2) the defendant's preference; (3) the ease of access to sources of proof; (4) the convenience of the witnesses – only to the extent that a witness may actually be unavailable for trial in one of the fora; and (5) where the claim arose." *Santi*, 722 F. Supp. 2d at 606-07 (citing *Mendoza v. U.S. Custom & Border Protection*, No. 05–6017, 2007 WL 842011, at *3 (D.N.J. March 19, 2007) (citing *Jumara*, 55 F.3d at 879)).  The public interest factors considered may include: "(1) practical considerations which could make the litigation easier and more expeditious, or inexpensive; (2) court congestion and administrative difficulties; (3) the local interest in resolving local controversies at home; and (4) the public policies of the fora." *Id.*  As set forth below, in the instant matter, both the private and public factors militate in favor of transferring this case to the SDNY.

**A.     The Private Interest Of The Parties Weighs In Favor Of Transfer To The SDNY**

Private factors weigh heavily in favor of transferring this case to the SDNY.  The heart of the dispute occurred in New York; transfer will create only negligible inconvenience to the Plaintiff; Defendants prefer to resolve the dispute in the SDNY; the Dalton School disputes personal jurisdiction in New Jersey; the witnesses and evidence are located in New York; and the center of gravity of Plaintiff's claims is in New York.

1.     Plaintiff's Choice Of Forum Should Not Be Afforded Any Deference

The first factor that the Court must analyze in weighing the private interests of the parties is Plaintiff's choice of forum.  Although a plaintiff's choice of forum is entitled to some deference, such choice is "'neither dispositive of the transfer analysis nor is it the only factor to be considered.'"  *Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F.Supp. 473, 480 (D.N.J.1993) (citing *Am. Tel. & Tel. Co. v. MCI Commc'ns Corp.*, 736 F.Supp. 1294, 1306 (D.N.J. 1990)).  Indeed, "'the preference for honoring a plaintiff's choice of forum is simply that, a preference; it is not a right.'"  *Id.* (citation omitted).  In the instant matter, although Plaintiff chose to file her Complaint in New Jersey, that choice should not be afforded deference by the Court because (i) the heart of the dispute occurred in New York; (ii) litigating in the SDNY will pose minimal inconvenience to Plaintiff; and (iii) Plaintiff's motive in filing in the DNJ was improper and clearly constituted "forum shopping" in order to improperly avail herself of a more favorable state's law.

A plaintiff's choice of forum "may be given substantially less deference" when litigating the matter in the plaintiff's chosen forum "does not coincide with the district wherein the heart of [the] dispute occurred." *McNulty v. J.H. Miles & Co.*, 913 F. Supp. 2d 112, 117 (D.N.J. 2012); *see also Fortay v. Univ. of Miami*, No. CIV. A. 93-3443, 1994 WL 62319, at *8 (D.N.J. Feb. 17,

1994) ( "a plaintiff's choice of forum is accorded no special consideration when the nucleus of operative facts is outside the forum state."); *Ricoh Co.*, 817 F.Supp. at 481 ("[w]hen the central facts of a lawsuit occur outside the forum state, a plaintiff's selection of that forum is entitled to less deference."). As such, any deference to a plaintiff's choice of forum is diminished when the case "involves facts and injuries which occurred in but are not centered in New Jersey." *Am. Tel. & Tel. Co. v. MCI Commc'ns Corp.*, 736 F. Supp. at 1306 (transferring Latham Act case concerning alleged misrepresentations by telemarketing firm when only 2% of the Defendant's telemarketing activities were directed to New Jersey)

Here, Plaintiff's choice of venue should be accorded no deference because the "heart" and nucleus of operative facts of this case is indisputably in New York. All parties were New York residents during the relevant time period. *Compl.*, ¶¶ 22-23. Three of the four alleged acts of misconduct occurred in New York. *Compl.*, ¶¶ 37-40. *See Fortay*, 1994 WL 62319, at *9 (holding that "the center of gravity for the majority of defendants' alleged wrongdoings" was not in New Jersey when fifteen of the twenty-five counts in Plaintiff's complaint alleged wrongdoing outside of New Jersey). The relationship of the parties was centered in New York. Almost every fact pled in the Complaint occurred in New York. Whatever connection New Jersey "has to the subject matter at hand is overshadowed by the Southern District of New York's close connection to the central facts issued." *Patton Boggs LLP v. Chevron Corp.*, No. CIV.A. 12-901 ES CLW, 2012 WL 6568461, at *5 (D.N.J. July 18, 2012), report and recommendation adopted, No. CIV.A. 12-901 ES, 2012 WL 6568526 (D.N.J. Dec. 14, 2012) (granting transfer to the SDNY in a case to execute a bond and recover attorneys' fees where the underlying dispute arose from litigation in the SDNY).

Further, Plaintiff's choice of forum should be accorded less weight because "transferring

venue would result in only negligible inconvenience to the plaintiff." *Girgis v. Hartford Life & Acc. Ins. Co.*, No. 2:10-CV-05279 DMC, 2011 WL 2115814, at *1 (D.N.J. May 25, 2011); *Johnson v. Nextel Commc'ns, Inc.*, No. CIV.A. 06-CV-5547DMC, 2007 WL 2814649, at *4 (D.N.J. Sept. 21, 2007) (transfer from the DNJ to the SDNY would "result in only slight inconvenience to [p]laintiffs"). Plaintiff lives in Hudson County, New Jersey, which is directly adjacent to Manhattan and offers numerous modes of affordable transportation into Manhattan. In light of the SDNY's close proximity to both Hudson County and Newark, New Jersey (the venue in which this case was filed), transferring venue to the SDNY would result in only negligible inconvenience to Plaintiff.

Another reason Plaintiff's choice of forum should not be afforded any deference is that she was clearly forum shopping when she chose to file in New Jersey. Plaintiff's claims in this case involve acts that allegedly occurred over thirty (30) years ago. *Compl.*, ¶ 36. Plaintiff knows that the statute of limitations presents a real problem for her and that her claims will likely be time barred under New York law. New York does not have a "delayed discovery" rule for the purposes of tolling childhood sexual abuse claims; such claims must be brought within 1 year of the child's 18th birthday. NYCPLR 215; NYCPLR 208. Although there is a statutory exception for serious sex crimes against a minor that provides a 5 year statute of limitations, it is inapposite because (i) the type of abuse alleged by Plaintiff is not covered by this statute, and (ii) in any event, the statute of limitations would have expired on Plaintiff's 23rd birthday. NYCPLR 213-C. *See Zumpano v. Quinn*, 12 A.D.3d 1096, 1097, (2004), *aff'd*, 6 N.Y.3d 666 (2006); *see also Doe v. Roe,* 799 N.Y.S.2d 160 (Sup. Ct. 2004) (statute of limitations will not be tolled in sexual abuse case unless plaintiff can demonstrate some affirmative act after the initial act of wrongdoing that prevented plaintiff from bringing an action).

8

By contrast, claims brought under NJCSAA must be brought within 2 years from "reasonable discovery of the injury and its causal relationship to the act of childhood sexual abuse." N.J.S.A. 2A:61B-1(b). The NJCSAA further contains a tolling provision, which permits a plenary hearing to determine whether the statute of limitations should be tolled because of the plaintiff's mental state, duress by the defendant, or any other equitable grounds. *Id.* While Mr. Dunnan in no way concedes that Plaintiff's claims would be timely even under NJ law, it is clear that Plaintiff knew the chances of her claims surviving under NJ law were better than under NY law. By her counsel's own admission, "Plaintiff's claims arise under a New Jersey statute, because New Jersey has chosen to protect victims of childhood sexual abuse in ways that other states have not."[3] [ECF No. 26, , at 3]. Knowing this, she made a deliberate decision to file in NJ – despite the fact that this matter clearly belongs in NY. This Court should not tolerate such blatant forum shopping and therefore should afford Plaintiff's decision to file in the DNJ no deference.

### 2.    Defendants' Preference Is To Litigate In New York

In the present matter, both Defendants clearly prefer to litigate this matter in the SDNY. Mr. Dunnan, a New York resident, certainly prefers to resolve this dispute the state in which he worked as the headmaster of the Dalton School, the state where he lives, the state where Plaintiff attended school and resided with his family, and the state in which all but one of the alleged acts occurred. Although the Dalton School has not joined in this Motion, its preference to litigate in New York is clearly expressed in its pending Motion to Dismiss on personal jurisdiction grounds: "[G]iven that Dalton does not educate any students in New Jersey and all but one of

---

[3] In Plaintiff's opposition to Defendant Dalton's motion to dismiss for lack of personal jurisdiction, she likewise acknowledges the benefit conferred to her by seeking relief in New Jersey, stating "The New Jersey Legislature passed the CSAA specifically in order to address concerns that, under existing law, 'victims of sexual abuse were limited to common-law theories of assault, battery, and intentional infliction of emotional distress, and constrained by ...' the two-year statute of limitations for tort actions.'" *Id.*

Plaintiff's allegations of sexual assault allegedly occurred in New York (not New Jersey), the State of New Jersey does not have any particular interest in adjudicating the dispute. Plaintiff could seek convenient and effective relief against Dalton in a New York court." [ECF. No. 12-4, at 14]. Defendants' preference to be in the SDNY "weighs moderately in favor of transfer, particularly in this case where a substantial part of the events and omissions giving rise to the heart of Plaintiff's claims occurred" in New York. *McNulty*, 913 F. Supp. 2d at 117.

### 3.    The Ease Of Access To Sources Of Proof And Convenience Of Witnesses Weighs In Favor of Litigation In The SDNY

Given the fact that virtually all of the operative facts occurred in New York, the Dalton School and its faculty were and continue to be located in New York and Plaintiff resided with Mr. Dunnan in New York (where Mr. Dunnan continues to reside), there is no question that New York is where the evidence and witnesses in this case will be located. Moreover, given the close proximity between SDNY and the DNJ, Plaintiff will not be inconvenienced by litigating there. *See Franklin U.S. Rising Dividends Fund v. Am. Int'l Grp., Inc.*, No. CIV.A. 2:13-05805 JL, 2014 WL 1555133, at *9 (D.N.J. Apr. 14, 2014), *aff'd*, No. CIV.A. 13-5805 ILL, 2014 WL 3748214 (D.N.J. July 29, 2014) (finding that the convenience of the witnesses and access to records were neutral factors "given the close proximity of SDNY and the District of New Jersey").

### 4.    The Claims Arose In New York

The final private interest factor of "where the claim arose" is "most critical to the Court's analysis." *Metro. Life Ins. Co. v. Bank One, N.A.*, No. CIV.A. 03-1882 SDW, 2012 WL 4464026, at *6 (D.N.J. Sept. 25, 2012); *Days Inns Worldwide, Inc. v. Ram Lodging, LLC*, No. CIVA 09-2275 (SDW), 2010 WL 1540926, at *6 (D.N.J. Apr. 14, 2010). In determining where a claim arose, courts consider "which forum contains the center of gravity of the dispute, its

events and transactions." *Park Inn Int'l, L.L.C. v. Mody Enterprises, Inc.*, 105 F. Supp. 2d 370, 377 (D.N.J. 2000). Courts look to the district where "'the contacts weigh most heavily.'" *Smith v. Circle Line Sightseeing*, No. CIV.A. 11-4185 WJM, 2012 WL 1495446, at *2 (D.N.J. Apr. 26, 2012) (citing *Hitachi Cable Am., Inc. v. Wines*, No. CIV.A. 85-4265, 1986 WL 2135, at *4 (D.N.J. Feb. 14, 1986)). The "mere fact that [a plaintiff] might have suffered damages in New Jersey does not mean that its claims arose in New Jersey." *Thorlabs, Inc. v. Townsend Commc'ns, L.L.C.*, No. CIV.A. 03-4550(JCL), 2004 WL 1630488, at *4 (D.N.J. June 30, 2004).

There can be no doubt that the center of gravity of this litigation is in New York. The parties were all New York residents at the time Plaintiff's claims allegedly arose; almost every event pled in the Complaint (including three of the four alleged acts of sexual misconduct) occurred in New York; and the relationships between the parties that allegedly gave rise to Plaintiff's claims were centered in New York. *See Jacobs v. Cider Mill Farms Co.*, No. 99-2832 AMW, 1999 WL 1418878, at *2 (D.N.J. Oct. 25, 1999) (center of gravity was in Massachusetts when the parties' employment relationship was centered in Massachusetts and plaintiff alleged at least one incident of unwanted sexual advance occurred in Massachusetts). Although a single incident of sexual misconduct is alleged to have occurred during an overnight trip in New Jersey, one alleged act is insufficient to shift the center of gravity from New York to New Jersey.

**B.     The Public Interest Weighs In Favor Of Transfer To The SDNY**

Like the private interest factors, the public interest clearly weighs in favor of transfer to the SDNY. The majority of the alleged culpable conduct occurred in New York; New York has a compelling interest in regulating the conduct of its local schools and educators and in protecting its students; declining to transfer this action may result in concurrent duplicative litigation in separate fora; and maintaining this action in New Jersey will require this Court to

11

apply unfamiliar law.

1.    New York Has A Strong Local Interest In Resolving This Dispute

When deciding between two potential forums, the district with "a greater interest in the action is a significant factor" in determining whether transfer is appropriate. *Shubert v. Marriott Int'l, Inc.*, No. 1:15-CV-05111, 2016 WL 245252, at *3 (D.N.J. Jan. 21, 2016). A district's local interest in a controversy is determined by considering "where the majority of the alleged culpable conduct occurred." *Id.* The Court should ascertain which district has a more compelling interest in regulating the underlying conduct alleged in the dispute. *Metro. Life Ins. Co.,* 2012 WL 4464026, at *8 ("New York has a compelling interest in … regulating the conduct of its corporations and the activities of corporate officers working for corporations which conduct business in that state."); *AB Coaster Holdings, Inc. v. Icon Health & Fitness, Inc.*, No. 2:10-CV-06760 ES-CLW, 2011 WL 6887724, at *6 (D.N.J. Dec. 29, 2011) (Utah's interest in adjudicating the case weighs in favor of transfer because "Utah has an interest in regulating the conduct of its corporations."); *Johnson*, 2007 WL 2814649, at *5 (holding that SDNY had a more compelling interest in deciding a putative class action against a law firm because it had "an interest in regulating attorneys who practice within [its] borders").

While both New Jersey and New York may have an interest in regulating conduct that occurs within their state lines, New York's interest in adjudicating this particular action far outweighs that of New Jersey. As previously emphasized, virtually all of the alleged culpable conduct (including three of the four alleged acts of sexual misconduct) occurred in New York. Moreover, New York has greatest interest in establishing standards and regulating the conduct of its local schools and educators and in adjudicating cases that implicate an area over which it has regulatory authority. *See e.g. Moore v. Baker*, No. 2:18-CV-6-MHT-DAB, 2018 WL 3421601, at *5 (M.D. Ala. June 18, 2018), report and recommendation adopted, No. 2:18CV6-MHT, 2018

12

WL 3420802 (M.D. Ala. July 13, 2018) (granting transfer to the Southern District of Alabama because it had "a greater interest in its local college and [in its] students and staff being sued in its home district."); *O'Brien v. Pennington Sch.*, No. CIV.A. 06-2101, 2008 WL 160588, at *6 (E.D. Pa. Jan. 15, 2008) (finding NJ law applied to litigation concerning actions of a New Jersey private school when "New Jersey has a strong interest in regulating the educational institutions located within its borders."); *Bailey v. Dallas Cty. Sch.*, No. 6:15-CV-1137 MHS-JDL, 2016 WL 3021683, at *3 (E.D. Tex. May 26, 2016) (transfer to the Northern District of Texas was warranted in case against a school because the Northern District had a local interest in seeing its educational programs comply with federal law); *Laureate Educ., Inc. v. Megahed*, No. CIV.A.AW-10-749, 2010 WL 2651895, at *11 (D. Md. July 1, 2010) (transfer to the Northern District of Illinois when Illinois has a substantial interest in resolving disputes involving two of its local colleges); *Hoeft v. Tucson Unified Sch. Dist.,* 967 F.2d 1298, 1303 (9th Cir. 1992) (recognizing the "traditionally strong state and local interest in education").  Although Plaintiff attended the Dalton School strictly in New York and came to know Mr. Dunnan solely by virtue of his position as headmaster for the Dalton School, she would nevertheless have a New Jersey Court resolve this dispute because she conveniently alleges that one act occurred there.  This is not sufficient.  New York's interest in resolving this controversy vastly exceeds any interest New Jersey may have in adjudicating this matter.

2.    Maintaining This Action In New Jersey May Create
        Duplicative Litigation In Two Separate Fora

Another compelling reason for transferring venue to New York is to avoid two separate litigations involving the same underlying controversy.  Dalton School has already filed a compelling motion to dismiss claiming lack of personal jurisdiction. [ECF No. 12].  If it prevails on that Motion, it may result in two concurrent litigations, one in New York against the Dalton

School and one in New Jersey against Mr. Dunnan, both premised on the same facts.

"To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to wastefulness of time, energy and money that 1404(a) was designed to prevent." *CIBC World Markets, Inc. v. Deutsche Bank Sec., Inc.*, 309 F. Supp. 2d 637, 651 (D.N.J. 2004) (citing *Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26 (1960)); *Patton Boggs LLP*, 2012 WL 6568461, at *7 ("Public policy favors avoiding duplicative litigation in different fora."). Even the *possibility* of duplicative litigation in separate fora weighs in favor of "transferring venue to a forum in which all potential claims could be adjudicated at once." *Nat'l Prop. Inv'rs VIII v. Shell Oil Co.*, 917 F.Supp. 324, 329 (D.N.J. 1995) (holding that transfer was desirable to avoid "piecemeal litigation" when New Jersey had no personal jurisdiction over certain parties involved in Plaintiff's claims); *Fortay*, 1994 WL 62319, at *11 (holding that because the Court could not exercise personal jurisdiction over several of the defendants, maintaining the action in New Jersey against only one defendant would "set the stage for split proceedings"). The possibility of "piecemeal litigation" or "split proceedings" in this matter strongly weighs in favor of transfer to the SDNY, where the Court would have jurisdiction over all Parties and the claims could be jointly resolved.

### 3.    The SDNY Is Most Familiar With The Governing Law

In a case where the Parties are diverse, the jurisdiction that is most familiar with the governing law should preside over the case. *Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 526 - 528 (D.N.J. 1998) ((holding that public interest factor weighed in favor of transfer to the Western District of Virginia when it "appear[ed] that Virginia law [would] likely apply to most of the issues involved in [the] case"); *Shubert v. Marriott Int'l, Inc.*, 2016 WL 245252, at *3 (D.N.J. Jan. 21, 2016) ("[J]ustice requires that, whenever possible, a diversity case should be decided by

14

the court most familiar with the applicable law") (citation omitted); *Nat'l Prop. Inv'rs VIII*, 917 F.Supp. at 331 (holding that transfer to the Eastern District of North Carolina was appropriate because North Carolina law would most likely apply to plaintiff's claims).

Although Plaintiff seeks to apply NJ law to her claims, there can be no question that it is New York law that should govern.[4]  All of the parties were New York residents during the relevant time period. (*Compl.* ¶¶ 22-23). The Dalton School performs the "sole [educational] function for which it was organized" in New York. *See P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 147, 962 A.2d 453, 462 (2008). Plaintiff chose to attend school in New York. *Id.* The relationship between the parties was centered on Plaintiff's educational experience in New York. *Id.* Three of the four alleged incidents of misconduct occurred in New York, and the single alleged New Jersey incident occurred during a brief recreational visit there. *See Elliott v. The Marist Bros. of the Sch.*, 675 F. Supp. 2d 454, 461 (D. Del. 2009) (applying the "most significant relationship" test and holding that New York law, and not the Delaware Child Victim's Act, should apply to sexual abuse claims involving "a non-Delaware victim, non-Delaware defendants, and transient, isolated Delaware activities," which included an alleged act of sexual abuse while on an overnight trip to Delaware). Further, the fact that Plaintiff is now a New Jersey resident "does not alter this determination." *J.G. v. C.M.*, No. CIV. 11-2887 WJM, 2011 WL 5600040, at *3 (D.N.J. Nov. 17, 2011). Given the fact that New York law unquestionably applies, New York courts are in better position to apply their own laws.

## CONCLUSION

For the reasons set forth herein, Mr. Dunnan respectfully requests that the Court transfer

---

[4] Even if this case were to remain in the DNJ, there can be no doubt that this Court would have to apply New York law. New Jersey choice of law principles require its courts to apply the "law of the state that has the most significant connections with the parties and the action." *Tischio*, 16 F. Supp. 2d at 527. As fully described herein, Plaintiff's claims have "by far the most connections to New York." *Dworin v. Deutsch*, No. 2:06CV01571 WJMRJH, 2006 WL 3095945, at *5 (D.N.J. Oct. 30, 2006).

this case to the SDNY, pursuant to 28 U.S.C. § 1404 (a).

Dated: October 12, 2018                          Respectfully submitted,

                                                 **LITTLER MENDELSON**
                                                 A Professional Corporation

                                                 */s/ Stacey D. Adams*
                                                 _____
                                                 Stacey D. Adams, Esq.
                                                 Emily Freeman David, Esq.
                                                 *Attorneys for Defendant*
                                                 *Gardner P. Dunnan*